H. G. HOYER et al., Appellees, v. C. G. GOOD, Appellant.

**SALES:** Warranties—Pleading—Unnecessary Allegation. Right of
1 rescission follows breach of warranty as matter of law; therefore, to plead that the vendor agreed that the vendee should have such right in case of such breach adds nothing to a pleading which avers a purchase, a warranty and a breach, and does not expose the pleader to the charge of pleading two inconsistent claims on the same cause of action, to wit, an *absolute* purchase and a *conditional* purchase.

**SALES:** Warranties—Evidence—Materiality of Matter Improperly
2 Pleaded. The fact that a vendor agreed, subsequently to a sale, that, in case of a breach of warranty, the vendee should have the right to rescind, is material as evidence in the nature of an admission of the breach of warranty, and as bearing upon whether the rescission was declared within a reasonable time, etc.

**SALES:** Remedies of Buyer—Note for Purchase Price—Payment
3 Effected by Transfer. A vendor who has received for property sold the promissory note of a vendee, and transfers the same, thereby effects payment to himself, and, in case the warranty under which the property was sold is breached, is liable to an action by the vendee for the return of the purchase price rep-

resented by the note, even though, at the time, the said transferee has an action pending against said vendee on said note.

APPEAL AND ERROR: Questions of Fact, Etc.—Stricken Pleading as Evidence on Appeal. The condition of a record on appeal may be such as to justify the court in assuming the truth of the allegations of a stricken pleading in order to meet the inconsistent attitude of the one filing such pleading.

PLEADING: Amendments—Belated Amendment—Discretion to Reject. The propriety of allowing belated amendments is peculiarly within the discretion of the trial court.

ELECTION OF REMEDIES: Acts Constituting Election—Rescission for Breach of Warranty. The action of a vendee in seeking, because of a breach of warranty, to recover of the vendor the purchase price of property bought, constitutes an election of remedies, and such election is in no wise affected by the fact that, pending said suit, the transferee of the note given by vendee for the purchase price brought action thereon, and the vendee therein answered and set up in defense the same matters alleged against the vendor as a cause of action.

*Appeal from Boone District Court.*—R. M. WRIGHT, Judge.

MARCH 12, 1917.

REHEARING DENIED DECEMBER 18, 1917.

ACTION to recover the price paid for a stallion on the ground of rescission of the contract for legal cause. The answer was a general denial. There was a verdict for the plaintiffs. The defendant appeals.—*Affirmed.*

*D. G. Baker* and *O. M. Brockett,* for appellant.

*Burnquist & Joyce* and *Whitaker & Snell,* for appellees.

EVANS, J.—The record before us is very voluminous, and the errors assigned therein are very many. We shall aim to group, as far as possible, the many questions that are discussed in the briefs, and thereby to avoid to some extent the necessity of dealing with them all *seriatim.*

At the time of the contract involved herein, the plaintiffs were engaged in the business of breeding horses in the

county of Webster. The defendant was an importer of breeding horses, doing business and residing in the county of Boone. In March, 1913, the plaintiffs purchased from him a stallion, known in this record by the name of Karre, for an agreed price, as alleged, of $1,200. The horse was represented and warranted, as alleged by plaintiffs, to be sound. The next morning after his delivery to the plaintiffs, he was discovered to be diseased, and the plaintiffs immediately, as alleged, elected to rescind the contract of purchase, and notified the defendant to that effect. The defendant immediately came to the plaintiffs' place of business, and, as alleged, conceded the unsound condition of the horse, and requested of the plaintiffs that he be kept for a time by them, with a view of possible recovery, to which request the plaintiffs assented. The horse never recovered. The plaintiffs repeated their notice of rescission. The defendant finally refusing to recognize their right of rescission, this action was brought. Though the answer of the defendant was a general denial only, the arguments in his behalf put forward the following contentions:

(1) That the petition of plaintiffs pleads inconsistent claims, in that it pleads an absolute sale, induced by warranty and false representations, and pleads also a sale conditional only, which sale never took effect because of failure of the condition.

(2) That, at the time of the purchase of the stallion, Karre, the plaintiffs, by the same contract, purchased from the defendant two stallions, Karre and Inventaire, for a lump sum of $2,000, and that the plaintiffs cannot rescind the contract in part without rescinding the same as a whole.

(3) That the plaintiffs never paid for the stallion Karre, in that, at the time of the purchase, they paid the sum of $500 only upon the joint purchase price of the two

horses, and executed their note for $1,500 balance of the purchase price.

(4) That the defendant's warranty or representation of soundness, if any, was conditional and qualified, in that he only agreed that a veterinary's certificate of soundness should be procured in fulfillment of such warranty, and that, until such certificate was procured, the horses should be deemed the property of the defendant, and that, when such certificate was procured, it should be deemed a fulfillment of the warranty, and that the defendant did procure such certificate of warranty.

It is undisputed that, at the time of the purchase of the stallion Karre, of which complaint is made, the plaintiffs did purchase the stallion Inventaire, of which no complaint was made. The plaintiffs contend, however, that contracts for the purchase of the two horses, though made at the same time, were separate, in the sense that they agreed upon the specific price of each horse, rather than a lump price for both horses. The evidence in behalf of the parties respectively is in direct conflict at this point. Though the plaintiffs claimed no breach of the warranty as to Inventaire, and claimed no right to rescind the contract as to him, yet, in declaring a rescission of the contract as to Karre and in tendering his return, they did in writing tender the return also of the horse Inventaire, and did offer, as to the horse Inventaire, that the defendant might elect whether to accept his return from the plaintiffs or permit the plaintiffs to retain him. The principal fighting points of fact in the case were whether separate prices were agreed upon in the purchase of each stallion, and whether the veterinary's certificate was to be deemed as a fulfillment of warranty of the representation of soundness. As we shall presently see, there was no substantial dispute but that there was, in the first instance, a declaration of soundness by the defendant, which might be deemed either a warranty or a representa-

tion; nor was there any substantial dispute but that the horse was found to be diseased within a comparatively few hours after he was delivered to the plaintiffs.

1. In the consideration of the assignments of error, we give our first attention to questions of pleading. Several of these assignments are based upon a construction of plaintiffs' petition. We are under the necessity, therefore, at the threshold, to determine the construction which should fairly be put upon the plaintiffs' petition. The particular paragraph of the petition calling for such construction was as follows:

1. SALES: warranties: pleading: unnecessary allegation.

"That, at the time of making the sale, the said defendant did expressly warrant and covenant to the said plaintiffs and each of them that the horses were sound in every particular, guaranteed said horses and each of them to be sound in every particular, and it was expressly orally agreed by and between the parties thereto that the said plaintiffs should have an opportunity of having said horses and each of them examined by any registered or licensed veterinary surgeon, and, if the said horses or either of them were not sound in every particular, the said horse or horses should be returned to the defendant and remain the property of the said defendant, and that he should refund the agreed price paid for the said horse or horses."

Following the foregoing paragraph, the petition alleged that the plaintiffs caused an examination to be made of the horse by a veterinary surgeon, who found him defective, and that the plaintiffs immediately notified the defendant, who immediately came to the home of the plaintiffs and saw the horse and admitted his unsoundness, and requested his retention by the plaintiffs with a view of his possible recovery, and that he agreed at the same time to treat the horse as his own in case it did not recover. The petition pleaded also an express warranty of soundness, and like-

wise representations of soundness, known by the defendant to be false. At the close of the testimony for the plaintiffs, the defendant filed a motion requiring the plaintiffs to elect as follows:

"(1) Whether this cause shall be submitted to the jury on the theory that it is an action for damages for the breach of said warranty; or (2) whether it should be submitted to the jury on the theory that it is an action for damages for said alleged fraud; or (3) whether it shall be submitted to the jury on the theory that the purchase and sale of the horses was conditional, and that the condition happened which prevented it from becoming an absolute sale, and an action only for the recovery of the alleged agreed purchase price; or (4) whether the cause shall be submitted to the jury on the theory that the plaintiffs are entitled to have judgment for the return of the alleged purchase money by reason of the alleged oral contract made after the horses came into possession of the plaintiffs and, as alleged by them, had been found to be unsound. And, subject to these motions and the right to except to an adverse ruling on any of them, the defendant moves the court to require the plaintiffs to elect whether they claim the right to rescind because they claim that there was a breach of warranty of soundness, or a sale to them procured by fraud, or whether they claim the right of rescission because they claim the contract was conditional, and that the condition upon which the same depended to become final never happened, but that the conditions happened which defeated the sale."

The court ruled upon the motion as follows:

"The motion made by the defendant is sustained to the extent of requiring the plaintiffs to elect whether they will proceed on the theory of warranty, false or fraudulent representations, or on the theory of a conditional sale or

a subsequent contract made between the parties in respect
to the property."

The plaintiffs responded to such ruling of the court as
follows:

"And the plaintiffs, to conform with the order of the
court sustaining the motion of the defendant requiring the
plaintiffs to elect, now elect to proceed in the trial of
this case, and base their cause of action upon the breach
of warranty and the false and fraudulent representations
made by the defendant to the plaintiffs at the time of the
sale."

The grounds of the motion to elect indicate the con-
struction which the defendant has put upon that part of
the plaintiffs' petition which we have quoted above. The
emphasis in argument for defendant is that the plaintiffs
pleaded a conditional sale or purchase, and that this was
entirely inconsistent with the claim of an absolute sale in
reliance upon a warranty or false representations.

The form of the petition is hardly to be commended as
a model pleading. We do not think, however, that it can
fairly be said to plead a conditional sale. The severest
criticism that can be made upon it is that it pleaded un-
necessary allegations. If the defendant warranted the
soundness of the horse, and if the horse was not in fact
sound, then such breach warranted a rescission of the con-
tract of purchase by the plaintiffs, upon discovery of such
breach. The plaintiffs' right to such remedy was neither
greater nor less by reason of the fact, if a fact, that the de-
fendant agreed to it. The agreement added nothing to such
remedy and took nothing away from it. It is possible that
such an agreement might have the effect to confine the plain-
tiffs to this remedy and to preclude them from resorting to
damages. If such were its effect, its materiality could
only arise in the event that plaintiffs had brought an action
for damages instead of declaring a rescission. Inasmuch,

however, as the plaintiffs have declared upon a rescission and have stood upon it on the ground of breach of warranty and false representations, we see nothing to be gained or lost to them by the fact that the defendant agreed to the remedy. Such pleading was unnecessary, but it presented no inconsistency. Nor was it conditional in any other sense than that the contingency of a rescission for cause clings to every contract. The plaintiffs pleaded this alleged agreement of the defendant's as made both before the contract was entered into and as made afterwards, when he was notified of the unsoundness of the horse. The subsequent agreement thus pleaded had its materiality as evidence as in the nature of an admission by defendant of the breach of warranty, and as bearing upon whether the rescission was declared within a reasonable time, and whether the right of rescission was waived by the continued possession of the horse. Defendant's motion to require plaintiffs to elect only required the plaintiffs to declare their "theory," and it was in that respect only that it was sustained by the ruling of the court. The defendant did not ask that any allegation be stricken from the petition nor that any evidence be stricken from the record, the facts themselves being material for some purposes, as already indicated. We think this analysis of the plaintiffs' petition is a sufficient answer to that group of the assignments of error which are predicated upon the theory that the plaintiffs pleaded a conditional sale. It answers also the complaint that the trial court erred in including a reference to some of these facts in some of its instructions to the jury. The basis of complaint at this point is that the trial court thereby submitted issues to the jury which it had withdrawn when it sustained the defendant's motion requiring the plaintiff to elect. No issues were withdrawn by any order of the court. The plaintiffs did commit them-

2. SALES: warranties: evidence: materiality of matter improperly pleaded.

selves to a theory that their action was based upon false representations and breach of warranty. The trial court expressly instructed the jury that there could be no recovery unless one or both be shown. Instruction XI 2-6 given by the trial court is complained of, not only because it submitted to the jury an issue which had been withdrawn, but because it submitted also the issue as to the subsequent oral agreement, for which no consideration was shown. The subsequent oral agreement referred to was the alleged agreement of the defendant when he asked the plaintiffs to keep the horse for a time in the hope of his recovery, and when he agreed, as claimed by plaintiffs, that, in the event of the failure of the recovery of the horse, he would accept its return. As already indicated, this fact was a material fact on certain features of the case, notwithstanding that it did not furnish the basis of the plaintiffs' cause of action.

It is strongly urged, in appellant's brief, that the plaintiffs themselves, as witnesses, testified to the conditional character of the sale, and that the sale was conditioned upon a veterinary's examination; and that this left no basis for an absolute warranty or representation. Plaintiff H. G. Hoyer testified as follows:

"A. Why, he said that he knew the horse was absolutely sound, and he said, 'I will guarantee the horse is sound.' He says, 'You can have him examined by any graduate or licensed veterinary.' * * * None of us examined the horses. Mr. Good said, 'I know they are absolutely sound and I will guarantee them sound.' "

Plaintiff William Hoyer testified as follows:

"He said he would guarantee these horses absolutely sound. We told him we did not care for any breeding guaranty. We told him that all we wanted was sound horses, and we wanted a certificate of soundness. In response to that, he said he would guarantee these horses ab-

solutely sound.   He made that statement several times that
day."

Plaintiff Schulze testified as follows:

"And he said, 'These horses are absolutely sound; I will
guarantee them sound.' And we told him we wanted a
certificate of soundness, and he said he knew they were
absolutely sound, and that we were to get a certificate of
soundness.   He made that remark several times.   *   *   *
And then the breeding guaranty was talked about, again,
and we told him we didn't want any such thing.   We
wanted sound horses and wanted the certificate of sound-
ness.   And Mr. Good said, 'The horses are absolutely sound,
boys; I will guarantee them sound, or I wouldn't sell you
those horses.' "

If the plaintiffs testified to any conditional sale or con-
ditional guaranty, it must be found in the foregoing ex-
cerpts.   Clearly, the evidence is not fairly susceptible to
such construction.   Summing up this branch of the case,
therefore, we may say that the plaintiffs' case was bottomed
upon a breach of warranty and false representations and
the right of rescission arising therefrom.   All assignments
of error which are predicated upon a contrary theory of the
pleading and evidence on behalf of the plaintiffs must ac-
cordingly be overruled.

2.   It is urged for the defendant appel-
3. SALES: reme-  lant that the plaintiffs were not entitled to
dies of buyer:
note for pur-  maintain this action, because they had not
chase price:
payment effect-  paid for the horse.   The method of payment
ed by trans-
fer.           has already been described. · The plaintiffs
gave to the defendant their check for $500 and their note
for $1,500 for the remainder, due January 1st following.
This note was sold by the defendant to a bank at Ogden, and
suit had been brought thereon against these parties before
the trial of this case was had.   The argument has several
phases.   The first argument is that, inasmuch as the plain-

tiffs were owing the defendant $1,500, the defendant could not be owing them $1,200. As an abstract legal proposition, what constitutes payment in a given case is often a fine question. The defendant has raised in this case at this point several exceedingly interesting questions. Could the plaintiffs have a right of rescission and yet not have a right of action? Inasmuch as the plaintiffs had paid for the horses only by check and note, were they bound to prove the payment of both the check and the note before they could bring an action to test their right of rescission? Inasmuch as plaintiffs could have been fully indemnified by a credit of $1,200 upon their outstanding note, were they entitled to any other remedy? If their right to credit upon their note was their exclusive remedy, and if the defendant refused to recognize their right of rescission, was there any way whereby they could take the initiative in enforcing their remedy? Or must they wait for the initiative of the defendant and interpose their defense to the note when he should sue it? It is the contention of the defendant that their right to a credit upon the note was the plaintiffs' sole remedy, and that such remedy was available to them only by way of defense to the note. Much argument is devoted to this proposition. *Morton v. Woods,* 154 Iowa 728. The argument, however, quite ignores the very decisive fact that the defendant had sold the note. Can it be said that a payee who has sold his note to a third party is still in a position to say that the maker is indebted to him upon the note? If nay, the argument falls wholly.

4. EVIDENCE: judicial notice: allegation of stricken pleading.

Clearly, the defendant, having sold the note to a third party, is in no position to say that the plaintiffs must wait suit by such third party and interpose their defense as against him. It is urged, however, by the appellant that there is no proof in this record that the defendant did sell the note, and no proof that the note was negotiable,

and none that the transferee was innocent. It is amazingly true that the proof on this question is indirect only. It might also furnish room for argument as to where the burden of disclosure is, and as to which party might suffer most from absence of evidence concerning such note. It does appear in the record, however, that the defendant filed an amendment to his answer which alleged the pendency of a suit brought upon such note against the plaintiffs herein by the transferee thereof, and wherein he set up the answer filed in such suit by the plaintiffs herein. This amendment was stricken by the court, and such ruling is the basis of one of the assignments of error presented herein for our consideration. As against the defendant, this is sufficient to require us, for the purpose of the question here raised, to take notice that he had transferred the note and thereby made the plaintiffs debtors to the transferee. Whether the transferee was innocent or not is quite immaterial to the defendant. It did not lie in the defendant's mouth to say the transferee was not innocent; because, upon his theory of the transaction, he himself, as payee of the note, was innocent, and the transferee of the note would necessarily be so. For the same reason, the negotiability of the note would be immaterial to the defendant. It is to be noted further that, when the plaintiffs declared the rescission, all they asked of the defendant was that he give them credit for $1,200 upon their note. So far as appears in this record, they have always been willing to accept such credit in lieu of any judgment.

All we hold now is that the defendant, having sold the note, is in no position to raise the question that the plaintiffs' remedy is by defense to a suit on the note.

5. PLEADING: amendments: belated amendment: discretion to reject.

3. It appears that, after the beginning of this suit and before the last trial thereof, the transferee of the note referred to in the foregoing division brought suit thereon

against these plaintiffs. The defendants answered in such suit, and set up as a defense thereto substantially the same facts as have been pleaded as a cause of action in this case. On the eve of the trial of this case, the defendant filed an amendment to his petition, setting up such answer of the plaintiffs herein as defendants in such other suit, and pleading the same as in the nature of an election or estoppel. Upon motion of the plaintiffs, the trial court struck the amendment as having been filed too late. Complaint is made of such ruling. The ground upon which the amendment was stricken was one which is peculiarly within the discretion of the trial court. We are further confirmed in the correctness of the ruling of the trial court in that the matters thus set up were of very doubtful materiality. The argument for such pleading is that, when the plaintiffs interposed such defense in the suit

6. ELECTION OF REMEDIES: acts constituting election: rescission for breach of warranty.

upon the note, it was in the nature of an election of remedy, and that they thereby elected to rely upon such defense, and necessarily waived their right of action as plaintiffs herein. But they had long previously elected their remedy in their previous action, and they had bound themselves by such election. If they could be beaten in the present suit by the fact that they had filed their answer in the other suit, they could, for the same reason, be beaten in that suit by the fact that they had elected to bring this suit. Clear it is that the election was determined by the first suit, and not by the second. The plaintiffs are entitled to only one satisfaction for the wrong, if any, suffered by them. Even a court of law is not helpless to prevent a double satisfaction. If they recover in this suit, they can have no defense to the note. Likewise, if they had been beaten in this suit upon the merits of the controversy, they could not have relitigated those merits in defense to the note.

4. On the question whether there was a distinct agreement between the parties as to the specific price to be paid for each stallion, the controversy was wholly on a question of fact. The jury specially found that there was a specific agreement to pay $1,200 for the horse in question. This finding has support in the testimony on behalf of the plaintiffs. Likewise, the question whether the warranty was qualified and conditional, and was to be deemed fulfilled by the certificate of a veterinary, was also a question of fact, and the verdict of the jury has become quite conclusive thereon. No useful purpose could be subserved by a discussion of the evidence. It cannot be claimed that the verdict is without support in the evidence on behalf of the plaintiffs.

The case is voluminous and quite complicated at many points. We cannot deal with each assignment of error without extending this opinion to undue length. What we have said in the foregoing is necessarily decisive of every point argued by the appellant. We think the record is free from prejudicial error. The judgment below is, therefore,—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.